UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

DANIEL DAVID WHITE,

                Plaintiff,

    v.

JERI TAYLOR, HEATHER NEVIL,
HEATH G. WELLS, COLETTE PETERS,
J.F. MITCHELL, and JOHN DOES 1-10,

                Defendants.

Case No. 2:17-cv-00981-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

       Plaintiff Daniel David White ("White"), an inmate in the custody of the Oregon Department of Corrections ("ODOC"), formerly housed at Eastern Oregon Correctional Institution ("EOCI"), brings this action pursuant to 42 U.S.C. § 1983, against EOCI corrections officers Defendants Jeri Taylor, Heather Nevil, Heath Wells, Colette Peters, J.F. Mitchell, and John Does 1-10 (collectively "Defendants"). White alleges that Defendants subjected him to a constitutionally deficient disciplinary process that resulted in his solitary confinement in the

Page 1 – OPINION AND ORDER

Disciplinary Segregation Unit ("DSU"), violating his rights under the First, Fifth, Eighth, and Fourteenth Amendments. Defendants' motion for summary judgment is granted.

*Factual Background*

On January 18, 2017, an EOCI chaplain received information that a weapon (a "shank") was being concealed in the spine of a book in cell A3-32. (Decl. Robert Rabb ("Rabb Decl."), Att. 1 at 2-4, ECF No. 69.) White was assigned to cell A3-32, bunk B. (*Id.* at 4.) Soon thereafter, Officers Mitchell and Wells searched the cell. (*Id.*) Mitchell and Wells used a metal detector to aid the search. Wells searched White's personal drawer and property inside the drawer. (*Id.*) Inside the drawer, Wells found a library book, and the metal detector alerted on the spine of the book. (*Id.*) Wells discovered a folded piece of paper tucked into the spine of the book. (*Id.*) Wells removed the paper and unfolded it to discover a five-inch long metal object (a nail), wrapped in sandpaper. (*Id.*)

Officer Wells also found a Playboy magazine with no name tag, six envelopes without names or state identification numbers, a three-foot piece of speaker wire with a needle attached to one end, six ear phone magnets, two altered headphone jacks, and two state-issued razors with the blades removed, but replaced to appear untampered. (*Id.*) Officer Mitchell took photographs of the sharpened nail, the sandpaper, the folded paper, and the razor with loose blades. (*Id.* at 5; Decl. Pl.'s Counsel ("Chavez Decl.") ¶ 7, Mitchell Dep. 21:22-25, ECF No. 78 at 70.) White was placed in disciplinary segregation pending a disciplinary hearing. (Rabb Decl. Att. 1 at 6.)

Officer Wells filled out a Misconduct Report that day. (*Id.* at 7.) In that report, Officer Wells wrote that he conducted a "random" cell search and described that he discovered a "5 inch piece of round metal sharpened on one end. The metal was wrapped with a piece of sand paper and folded in a piece of writing paper." (*Id.*)

Page 2 – OPINION AND ORDER

White was cited for rule violations, specifically: (1) 4.30 Possession of a Weapon (possession of an instrument altered for, or readily capable of causing death or serious physical injury); (2) 1.05 Property I (altered razor); and (3) 1.11 Contraband II (unauthorized sexually explicit material). (Decl. Heather Nevil (Nevil Decl.") ¶ 13, Att. 3 at 5.) *See also* Or. Admin. R. ("OAR") 291-105-0015(4)(l), 291-105-0015(1)(b)(D), 291-105-0015(1)(e)(A) (detailing violations). Possession of a Weapon carries a maximum possible penalty of 120 days in DSU, twenty-eight days loss of privileges, and a $200 fine. (Nevil Decl. Att. 2, at 34.)

On January 25, 2017, Hearings Officer Heather Nevil conducted White's disciplinary hearing. (Nevil Decl. ¶ 13, Att. 3 at 1-3.) During the hearing, Nevil reviewed the charges, read the report authored by Wells and Mitchell, examined the photographs, and gave White an opportunity to respond. (*Id.* at 14-22.) White denied committing the offenses charged and did not call any fact witnesses. White asked to be allowed to call as a witness Lieutenant Hazen "to vouch for my veracity and honesty," which Nevil denied. (*Id.* at 17.)

At the conclusion of the hearing, Nevil found White guilty of all three rule violations. The property and contraband violations merged into the weapon violation. (*Id.* at 2.) Nevil concluded that White had committed five major rule violations within the previous two years and recommended these sanctions: (1) 120 days in DSU, plus an upward deviation of sixty days pursuant to OAR 291-105-0072, due to persistent behavior, for a total of 180 days; (2) twenty-eight days loss of privileges; and (3) a $200 fine suspended through July 16, 2017, pending no major rule violations. (*Id.* at 2-3.) Nevil did not recommend loss of any good time credits because White did not have any such credits. (*Id.*) On administrative review, the Inspector General's Office concluded that Nevil's hearing and punishment were consistent with ODOC's rules. (*Id.* ¶ 24, Att. 4.) White's DSU sanction was scheduled to begin January 18, 2017 through

Page 3 – OPINION AND ORDER

July 16, 2017, and his loss of recreation yard privileges was scheduled from January 25, 2017 to February 21, 2017. (*Id.* Att. 3 at 2.)

White was placed in DSU solitary confinement at EOCI for 120 days, then was moved to Snake River Correctional Institution ("SRCI"), where he spent the remaining sixty days of his sanction. (Second Am. Compl. ¶ 23.) White asserts that his time in solitary confinement was harmful due to prolonged absence of sunlight and human contact. (Second Am. Compl. ¶ 31.) White contends that after serving his 180-day sanction, his custody level was increased, and he was placed in the intensive management unit ("IMU"), another form of segregation for an additional 120 days. (*Id.* at ¶ 23.) While in serving his sanction in DSU, White was not permitted access to an Odinist hammer, a religious symbol. (Second Am. Compl. ¶ 32.) White filed grievances concerning the denial of the Odinist hammer, but his grievances were denied. (Decl. Nina Sobotta ("Sobotta Decl.") ¶ 3, Att. 2 at 1-2, ECF No. 67.)

On June 21, 2017, White filed the current action pursuant to 42 U.S.C. § 1983, asserting Defendants' conduct violated his rights to due process, his right to free from cruel and unusual punishment, and his right to freely exercise his religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). (Second Am. Compl. ¶ 3.) White seeks compensation for economic loss and emotional harm, injunctive and declaratory relief, and reimbursed fees, costs, and expenses. (*Id.* ¶ 4.) White contends Defendants Taylor, Nevil, Wells, Mitchell, and Does 1-10 were acting under color of state law and sues them in their individual capacities; White alleges Defendant Peters, director of ODOC, was acting in an official capacity. (*Id.* ¶¶ 8-13.)

////

////

Page 4 – OPINION AND ORDER

*Legal Standards*

I.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).   The moving party satisfies its burden by offering the district court the portions of the record it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).   "[W]here evidence is genuinely disputed on a particular issue – such as by conflicting testimony – that issue is inappropriate for resolution on summary judgment." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation and citation omitted).

If the moving party demonstrates no issue of material fact exists, the burden falls to the nonmoving party to go beyond the pleadings and identify facts showing a genuine issue for trial. *Celotex,* 477 U.S. at 324.   The nonmoving party cannot defeat a motion for summary judgment with unsupported conjecture or conclusory statements, or by relying on allegations in the complaint. *Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).   "Mere allegations or denials" are insufficient to meet the nonmoving party's burden to show a genuine

Page 5  – OPINION AND ORDER

issue of material fact to defeat a motion for summary judgment. *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994). Importantly, if the nonmoving party fails to provide evidence to support an essential element of his case on which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

II.    42 U.S.C. §1983 Standards

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a cognizable claim under § 1983, an inmate must show:  (1) [defendants] acted under the color of state law, and (2) defendant[s] deprived plaintiff of a constitutional right. *Id.*  In the Ninth Circuit, a prison official acts under color of state law where such actions are carried out in their official capacity as an employee of the state. *Id.* at 1068.  Liability under § 1983 must be predicated on a defendant's individual involvement in the constitutional violation and cannot be premised on respondeat superior. *Iqbal*, 556 U.S. at 676.

A cognizable claim under Section 1983 also requires an inmate to show causation; that a particular defendant engaged in "'an affirmative act, participat[ed] in another's affirmative act, or omit[ted] to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)); *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). To establish causation, the inmate must include in his pleadings "specific facts as to each individual defendant's" causal role in the alleged constitutional deprivation. *Leer*, 844 F.2d at 634. Accordingly, when determining causation, a court "must

take a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Id.* at 633-34.

III.    Qualified Immunity Standards

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Sjurset v. Button*, 810 F.3d 609, 614 (9th Cir. 2015).    Qualified immunity balances the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.    Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.    When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).    "In determining whether qualified immunity applies, courts 'must determine whether:    (1) the facts adduced constitute the violation of a constitutional right; and (2) the constitutional right was clearly established at the time of the alleged violation.'" *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 617 (9th Cir. 2018) (quoting *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016)).    The court may examine these two requirements in either order; failure of either prong precludes a plaintiff's claims against an individual defendant.    *Pearson*, 555 U.S. at 236.

To decide if a constitutional right was "clearly established" at the relevant time, "'the key question is whether the defendants should have known that their specific actions were unconstitutional given the specific facts under review.'" *Daniels Sharpsmart*, 889 F.3d at 617

Page 7 – OPINION AND ORDER

(quoting *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016)).  "In other words, the right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Id.* (emphasis omitted, internal citations and quotations omitted).  "That is, existing precedent must have 'placed beyond debate the unconstitutionality of' the officials' actions, as those actions unfolded in the specific context of the case at hand."  *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016).  Thus, prison officials are entitled to qualified immunity so long as no precedent squarely governs the officials' conduct at issue, and the court must conclude that only someone plainly incompetent or who knowingly violated the law would have acted as the officials did.  *Id.*

### Discussion

Defendants contend that White's federal claims fail as a matter of law because no clearly established constitutional right is implicated by any of White's § 1983 allegations.  Defendants argue that qualified immunity entitles them to summary judgment on all of White's claims for money damages.  Additionally, Defendants argue that White is not entitled to injunctive or declaratory relief pertaining to his free exercise allegations because he is no longer incarcerated at EOCI.

In his response, White argues that the qualified immunity defense no longer is legally tenable and should not shield Defendants from liability, because their conduct violated his clearly established constitutional rights about which a reasonable person would have known.  White contends that Defendants violated his due process rights by conducting a constitutionally deficient investigation and disciplinary hearing.  White argues that due process requires a hearing with properly collected evidence, witnesses, and asking questions, and that his liberty interest was violated by being placed in the DSU.  White further contends that his 180-day confinement in

Page 8 – OPINION AND ORDER

DSU violated the Eighth Amendment.   Finally, White argues that Defendants' refusal to provide him an Odinist hammer, a religious symbol, while in DSU violates the First Amendment and the RLUIPA.

I.    Substantive and Procedural Due Process

White alleges generally that Defendants violated his procedural and substantive due process rights by denying him a fair proceeding and sanctioning him to 180 days in the DSU and twenty-eight days' loss of privileges.   (Second Am. Compl. ¶¶ 21, 23, 33.)   White contends that Officers Wells and Mitchell violated his due process rights by failing to follow ODOC policies when photographing evidence, failing to disclose in their written reports the search of White's cell was premised on information received by a confidential informant, and falsely referring to a modified weapon.   (*Id.* ¶ 34.)   White contends that he was denied an impartial adjudicator, and that Hearings Officer Nevil violated his due process rights by denying him the right to call witnesses and question witnesses, and that he relied on the faulty misconduct report.   (*Id.* ¶¶ 33-34.)   White contends that Defendant Taylor knowingly and recklessly violated his due process rights by failing to properly supervise, train, and control Nevil, Wells, Mitchell, and Does 1-10. (*Id.* ¶ 35.)

Defendants move for summary judgment, arguing that White's 180-day placement in DSU and twenty-eight days' loss of privileges does not implicate a liberty interest protected by the Due Process Clause.   Defendants argue that because White has failed to allege facts that could plausibly demonstrate that it would have been clear to Hearings Officer Nevil that the 180-day sanction and twenty-eight days' loss of privileges amounted to an atypical and significant hardship, Nevil is entitled to qualified immunity.

////

Page 9 – OPINION AND ORDER

A.    Substantive Due Process

The Due Process Clause of the Fourteenth Amendment protects liberty interests that arise under the clause itself or under state law.   *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013).   Due process claims require the prisoner to show that a governmental actor interfered with a recognized liberty interest and that the procedures surrounding the alleged interference were constitutionally insufficient.   *Kentucky Dep't Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).   For White to be entitled to due process protections, the court must find that he has a liberty interest triggering procedural protections.   *Chappell*, 706 F.3d at 1062.

Legally incarcerated persons "retain only a narrow range of protected liberty interests." *Id.* at 1062-63 (quotation omitted).   "Prisoners are entitled to certain due process protections when subject to disciplinary sanctions."   *Brown v. Oregon Dep't of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014).   A change in the conditions of confinement may create a protected liberty interest only if the changed condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin v. Conner*, 515 U.S. 472, 484 (1995).   To determine whether a condition of confinement imposes an atypical and significant hardship, the court examines:   "'1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.'"   *Brown*, 751 F.3d at 987 (quoting *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (citations omitted by *Brown*)).   The court examines the circumstances of each case, "rather than invoking a single standard."   *Chappell*, 706 F.3d at 1064 (inquiry is "context-dependent" and

requires "fact by fact consideration") (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)). If the court determines that a liberty interest is at stake, the court must then determine whether the procedures used to deprive that liberty satisfied due process.   *Sandin*, 515 U.S. at 487.

White alleges that his 180-day placement in DSU and his twenty-eight-day loss of privileges violated his liberty interests.   Defendants respond that White does not have a constitutionally protected liberty interest in remaining free from limited placements in disciplinary segregation, or to be free from a limited loss of privileges.

As to the third factor, White does not allege and the court does not find that his time in DSU extended the duration of his sentence.   With respect to the first factor, White does not allege that he experienced conditions different than other inmates housed in DSU.   *See Smith v. Powell*, 2:14-cv-01725-SB, 2016 WL 11384325, at *5 (D. Or. Jan. 25, 2016), adopted 2016 WL 1183086 (Mar. 28, 2016), *aff'd* 693 F. App'x 610 (9th Cir. 2017) (finding no issues of fact on the first and third factors); *LaFleuer v. Nooth*, 2:12-cv-00637-SI, 2014 WL 1236138, at *4 (D. Or. Mar. 25, 2014) (same).   White's due process claims center on the duration of his DSU confinement, and whether his 180-day placement caused him an atypical and significant hardship compared to ordinary prison life.

White's placement in DSU, standing alone, does not create a protected liberty interest. "Custody in DSU, standing alone, does not satisfy the significant and atypical hardship requirement."   *Carter v. McNitt*, Case No. 2:17-cv-00888-JO, 2020 WL 2844445, at *5 (D. Or. June 1, 2020); *see also Anderson v. Cty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) ("administrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence"), *amended on other grounds*, 75 F.3d 448 (9th Cir. 1995); *Sandin*, 515 U.S. at 487 (holding inmate had no liberty interest in being free from

Page 11 – OPINION AND ORDER

thirty days in disciplinary segregation).   As judges in this district have determined, "there is no bright-line rule as to the duration of segregation that invokes a liberty interest."   *Smith*, 2016 WL 11384325, at \*5 (collecting cases); *see also Carter*, 2020 WL 2844445, at \*5 (holding fourteen-day placements in DSU and twelve to seventy-two hour cell-ins and loss of privileges did not implicate a protected liberty interest); *Williams v. Simon*, 2:13-cv-00950-AA, 2018 WL 1585785, at \*6 (D. Or. Mar. 30, 2018) (holding nineteen-month fixed and irreducible stay in IMU may create liberty interest, but prison officials were entitled to qualified immunity).   In *Brown*, the Ninth Circuit concluded that a twenty-seven month (810-day), indeterminate stay in segregation without meaningful review implicated a liberty interest.   *Brown*, 751 F.3d at 988.

However, in *Smith*, Judge Beckerman held that a 120-day, finite stay in DSU did not implicate the inmate's liberty interests.   *Smith*, 2016 WL 11384325, at \*5.   As she observed, "neither the Supreme Court, nor the Ninth Circuit has held that a 120-day duration in disciplinary segregation amounts to a significant and atypical hardship."   *Id.*   White's 180-day finite placement in DSU is significantly shorter than the twenty-seven month stay in *Brown* and the nineteen-month stay in *Williams* and more akin to the situation present in *Smith*.   Therefore, the court concludes that the duration of White's disciplinary segregation did not implicate a liberty interest.   *Smith*, 2016 WL 11384325, at \*5.   Likewise, White's twenty-eight-day loss of yard privileges is not an atypical or significant hardship in the context of ordinary incidents of prison life, such as to implicate a protected liberty interest.   *Carter*, 2020 WL 2844445, at \*5.

The court next turns to the degree of restraint White alleges he suffered in DSU.   The court must consider whether degree of restraint and his specific conditions of confinement posed an atypical and significant hardship.   *Wilkinson*, 545 U.S. at 223 (discussing liberty interest in restrictive conditions of segregated confinement in supermax prison facility); *see also Serrano v.*

Page 12 – OPINION AND ORDER

*Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (holding that wheelchair-bound inmate's placement in a non-handicapped-accessible SHU for twenty-five days was an atypical and significant hardship).    White contends that while in DSU, his cell windows were painted over, denying him access to sunlight, causing him a vitamin D deficiency, and that his time in solitary confinement in DSU caused him severe distress, anxiety, sleeplessness, and tension.    White also contends he was denied access to an Odinist hammer while in disciplinary segregation.

As Judge Beckerman observed in *Smith*, "courts in this district have held that conditions experienced by inmates in the DSU at Oregon state prisons are not atypical or significant, and therefore a DSU transfer does not implicate a prisoner's liberty interest."    *Smith*, 2016 WL 11384325, at *7; *Mora-Contreras v. Peters*, 6:18-cv-000678-SB, 2020 WL 2089479, at *2 (D. Or. Apr. 30, 2020), *appeal filed* (9th Cir. June 1, 2020) (finding that overheating, loud fans, lack of sunlight, loss of recreation privileges in disciplinary segregation were not atypical and significant hardships that could implicate inmates' liberty interests); *cf. Wilkinson*, 545 U.S. at 223-24 (holding that inmate's confinement for twenty-three hours per day and deprivation of nearly all human contact and environmental stimuli implicated liberty interest).    Aside from his own affidavit, White has not identified any record evidence to create an issue of fact that he suffered a vitamin D deficiency and that such a condition is connected to his time in DSU as opposed to being incarcerated generally.    Although White alleges he was denied natural sunlight for twenty-eight days, he does not contend that the he was denied light or other visual stimuli.    And, White has not established that his denial of an Odinist hammer while in the DSU is an atypical or significant hardship rising to a protected liberty interest.

In summary, viewing the facts in the light most favorable to White, the record fails to support an issue of fact that either White's duration or degree of confinement in DSU implicated

Page 13 – OPINION AND ORDER

a state-created liberty interest protected by the Due Process Clause.[1]  *Smith*, 2016 WL 11384325,

at *7; *see also Hudson v. Belleque*, No. 07-cv-1058-HA, 2009 WL 2015396, at *3 (D. Or. July 6,

2009) (holding denial of privileges, working, attending religious and school programming for

eighty-four days while in DSU was not atypical or significant hardship); *accord Fort v. Mauney*,

Civ. No. 10-1407-AA, 2011 WL 2009351, at *4 (D. Or. May 23, 2011), *aff'd* 486 F. App'x 655

(9th Cir. 2012) (holding 180-day DSU placement did not implicate due process liberty concerns).

To the extent that White contends that Nevil's findings that he committed the rule

violations (Property I, Contraband II, and Possession of a Weapon) are arbitrary and capricious or

without evidence and that the disciplinary hearings, therefore, violated his substantive due process

rights, his claims are without merit.   Substantive due process requires only that there be "some

evidence in the record" supporting the prison's disciplinary decision.  *Williams v. Thomas*, 492 F.

App'x. 732, 734 (9th Cir. 2012); *see also Requena v. Roberts*, 650 F. App'x. 939, 940 (10th Cir.

2016) ("But the evidentiary standard a prison must satisfy in a disciplinary proceeding is minimal

– a prison comports with due process so long as there is 'some evidence' supporting its decision.")

(citation omitted).

The court's review of the record demonstrates there is evidence to support the prison's

disciplinary decision, including, but not limited to : (1) photographs of the weapon; (2) information

---

[1] Plaintiff's contention that he spent 300 days in solitary confinement is not supported by evidence in the record.   Plaintiff contends that after serving his sanction of 180 days in DSU, he was then transferred to the IMU for an additional 120 days.   (Second Am. Compl. ¶ 25.)   Plaintiff's arguments concerning his alleged IMU placement are not well-developed.   Aside from the allegations in his Second Amended Complaint, he cites nothing in the record regarding his alleged IMU placement, its duration, or whether periodic reviews occurred.  *See Brown*, 751 at 986-87. Thus, Plaintiff has failed to establish that the conditions of his alleged confinement in the IMU at SRCI posed an atypical or significant hardship.  *Id.* at 988 (holding that twenty-seven-month confinement in IMU without meaningful review posed an atypical and significant hardship).

Page 14 – OPINION AND ORDER

from the confidential informant detailing that White was concealing a weapon in the spine of a

book; (3) corroborating statements from correctional officers Wells and Mitchell detailing their

search of White's cell and the items found.    (Rabb Decl. Atts. 1 & 2.)    Those materials provided

sufficient evidence for Nevil to conclude that White committed the rule violations.    The court

concludes that Defendants are entitled to summary judgment on White's substantive due process

claim because there is "some evidence in the record" supporting the prison's disciplinary decision.

*See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) ("Given that some evidence supported the

[decision that Bruce was a member of a prison gang], the district court properly entered summary

judgment in favor of defendant prison officials on Bruce's due process claim.").

     B.     *Procedural Due Process*

     White alleges that the disciplinary hearing violated his procedural due process rights.

White argues that he was denied the ability to call witnesses and ask questions, denied an impartial

adjudicator, and was convicted based on contrived and tampered evidence.    (Second. Am. Compl.

¶¶ 33.)    The court disagrees.

     "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply

of rights due a defendant in such proceedings does not apply."    *Wolff v. McDonnell*, 418 U.S. 539,

556 (1974).    *Wolff* sets forth the minimum procedural protections that must apply to prison

disciplinary proceedings.    *Id.*    The Ninth Circuit summarized those requirements as follows:

> First, written notice of the charges must be given to the disciplinary-action
> defendant in order to inform him of the charges and to enable him to marshal the
> facts and prepare a defense.    Second, at least a brief period of time after the notice,
> no less than 24 hours, should be allowed to the inmate to prepare for the appearance
> before the [hearings officer].    Third, there must be a written statement by the
> factfinders as to the evidence relied on and reasons for the disciplinary action.
> Fourth, the inmate facing disciplinary proceedings should be allowed to call
> witnesses and present documentary evidence in his defense when permitting him to
> do so will not be unduly hazardous to institutional safety or correctional goals.

Page 15 – OPINION AND ORDER

> Fifth, where an illiterate inmate is involved or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or to have adequate substitute aid from the staff or from an inmate designated by the staff.

*Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (citations, quotation marks, brackets, and ellipses omitted), *overruled on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). "As long as the five minimum *Wolff* requirements are met, due process has been satisfied." *Williams*, 2018 WL 1585785, at *2 (citing *Hill*, 472 U.S. at 454-55). Generally, judicial review of a prison disciplinary decision is limited to whether there is a denial of procedural due process or evidence of an arbitrary and capricious action. *Hill*, 472 U.S. at 454-55; *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). A court must defer to prison officials' judgments and cannot substitute its view of the facts presented in a prison disciplinary hearing. *See Hill*, 472 U.S. at 455 (providing the "some evidence" standard does not "require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence").

Here, nothing in the record suggests that White is illiterate or required assistance due to the complexity of his case, that White failed to receive written notice of the charges more than twenty-four hours to prepare a defense, or a failed to receive a copy of Nevil's written decision. (*See* Nevil Decl. ¶¶ 14, Att. 3 at 14, reflecting that at January 25, 2017 hearing, White acknowledged receiving a copy of Well's January 18, 2017 misconduct report, that he understood his rights in the hearing, and denied the alleged misconduct.) The only disputed issues are whether Defendants provided White with sufficient opportunity to call witnesses, ask questions, and challenge the documentary evidence during the hearing.

White argues that he was entitled to notice that the search of his cell was premised on information received by a confidential informant under OAR 291-105-0028(9)(k)(A). The court

Page 16 – OPINION AND ORDER

disagrees for at least three reasons.    First, the rule upon which White relies relates to confidential informant testimony submitted to the hearings officer, not cell search results premised on confidential information.    *See Zimmerlee v. Keeney,* 831 F.2d 183, 186 (9th Cir.1987) (providing for due process protections when disciplinary hearings are premised on confidential informant testimony); OAR 291-105-0028(9)(k)(A) ("When confidential informant testimony is submitted to the hearings officer, the identity of the informant and the verbatim statement of the informant shall be submitted . . . in writing [.]")    In this case, no confidential informant testimony was received by Nevil and, therefore, OAR 291-105-0028(9)(k)(A) has no application here.    Second, White was disciplined based on the contraband, property, and potential weapon found in his possession during the search that Officers Wells and Mitchell conducted, not the confidential informant's testimony.    And third, under the circumstances here, White was not entitled to know that his cell search was premised on information obtained from a confidential informant.    *See Graves v. Knowles*, 231 F. App'x 670, 672 (9th Cir. 2007) ("While an inmate has the right to present evidence in his defense, the [*Wolff*] Court found that an inmate does not have the right to confidential, irrelevant, or unnecessary information."); *Munro v. Kelly*, Case No. 6:17-cv-01650-SB, 2019 WL 7197605, at *4 (D. Or. Sept. 13, 2019), *adopted* 2019 WL 7194566 (Dec. 26, 2019) (holding hearings officer appropriately denied inmate's requests to learn more information about confidential informant, denying procedural due process claim).

White also contends that his procedural due process rights were violated when Officers Wells and Mitchell failed to include a marker or scale when taking photographs of the metal object found in the book binding, in violation of ODOC policy concerning collection of evidence.    The court disagrees.    Even if ODOC policy requires adherence to the evidentiary policy as White suggests, the procedural due process requirements of *Wolff* do not.    *Wolff*, 418 U.S. at 556

Page 17 – OPINION AND ORDER

(observing that a prison disciplinary hearing is not a "criminal prosecution" and that the "full panoply of rights" do not apply).   Furthermore, the misconduct report described the metal object as five inches in length, and the photograph included a piece of paper and the book in which it was found for scale.   (Rabb Decl. Att. 2, a 1-2.)   Thus, White has failed to show that the disciplinary decision based on the photographs was arbitrary or capricious, or somehow violated his procedural due process rights under *Wolff.*

Lastly, White argues that Hearings Officer Nevil violated his procedural due process rights when she refused his request to call a character witness or permit him to ask questions.   Contrary to White's suggestion, a careful review of the hearing transcript does not reveal that he was denied the opportunity ask questions.   Rather, Nevil denied his request to ask questions of *her*, and permitted White to make a statement and engaged with him until he became argumentative. (Nevil. Decl. Att. 3 at 20-21.)   The transcript also reveals that White did not call any fact witnesses to testify, that he asked Lieutenant Hazen to "vouch for my veracity and honesty," and that Nevil denied his request to call a character witness.   (*Id.* at 17.)   Here, White does not offer any plausible theory of how the outcome of his disciplinary hearing would have been changed or altered if his request to call a character witness would have been granted.   White has not demonstrated that his procedural due process rights were violated because he was denied the right to call Lieutenant Hazen.   *Martin v. Williamson,* Case No. 2:12-cv-01916-CL, 2014 WL 4983660, at *2 (D. Or. Oct. 3, 2014) (holding that hearings officer did not violate procedural due process where inmate's request to call character witness denied).   In short, the court concludes that the minimum *Wolff* procedural requirements were satisfied here.

Moreover, the disciplinary decision reached by Hearings Officer Nevil is supported by "some evidence." *Hill,* 472 U.S. at 454-55; *Wolff,* 418 U.S. at 570.   To the extent that White

Page 18 – OPINION AND ORDER

takes issue with how much evidence is required, the court finds that the record readily supports the "some evidence" standard in this case. *See Williams*, 2018 WL 1585785, at *3 (discussing that the standard is "minimally stringent" and that any evidence in the record could support the disciplinary decision is sufficient). Based on the results of the cell search, the evidence could support the disciplinary decision made in this instance.

White has failed to establish how Defendant Taylor, former Superintendent of EOCI, violated his procedural due process rights. In his Second Amended Complaint, White asserts that Taylor was responsible for supervising and training Defendants Nevil, Wells, Mitchell, and Does 1-10, and that she recklessly encouraged and condoned the due process abuses. (Second Am. Compl. ¶ 22, 35.) White's suggestion that Taylor violated his due process rights simply by supervising others fails as a matter of law. *See Iqbal*, 556 U.S. at 676 (holding there is no § 1983 liability under a respondeat superior theory); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010), *overruled on other grounds by Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) (same). White's contention that Taylor violated his procedural due process rights when she approved the initial sanction recommended by Hearings Officer Nevil similarly fails because it was reviewed by the Inspector General's office. (Nevil. Decl. ¶ 24, Att. 4 at 1.) Thus, White has failed to create any genuine issue of fact that Defendant Taylor played any role in his alleged procedural due process violation.

White's due process allegations against Defendant Peters are unfounded. White alleges that Director Peters is the ODOC director, and that she is sued in her official capacity. (Second Am. Compl. ¶ 11.) To bring a claim against a state official in their official capacity, a plaintiff must allege that the state official could respond appropriately to a court order on injunctive relief. In this case, to bring a claim against Director Peters for due process violations, White must identify

"a practice, policy, or procedure that animates the constitutional violation at issue." *Ariz.*
*Students' Ass'n v. Ariz. Bd. or Regents*, 824 F.3d 858, 865 (9th Cir. 2016).   White has not done
so.   Because White has failed to demonstrate any constitutional violations, Defendants are entitled
to summary judgment on his claims for declaratory and injunctive relief against Defendant Peters.

In summary, viewing the evidence in the light most favorable to White, the record fails to
support the conclusion that White's substantive or procedural due process rights were violated.
In the absence of a constitutional violation, White is unable to overcome the qualified immunity
of Hearings Officer Nevil, Officer Wells, Officer Mitchell, and Superintendent Taylor.   Thus,
Defendants are immune from suit on White's claims for monetary relief for violations of the Due
Process Clause.

II.    Eighth Amendment

White alleges that his 180-day placement in DSU and twenty-eight-day loss of privileges
violated the Eighth Amendment.   White contends that his solitary confinement caused him bodily
injury, pain, loss of liberty, mental and emotional suffering, and loss of enjoyment of recreational
and leisure activities.   (Second Am. Compl. ¶ 36.)   White seeks compensatory and declaratory
relief.   (*Id.*)   Defendants move for summary judgment, contending that White has failed to allege
that any named Defendant is responsible for the conditions in DSU or that any Defendant was
deliberately indifferent to a known risk to White's health or safety, and that they are entitled to
judgment as a matter of law.

An inmate alleging Eighth Amendment violations based on prison conditions must
demonstrate that prison officials were deliberately indifferent to the inmate's health or safety by

subjecting him to a substantial risk of serious harm.[2] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. *Farmer*, 511 U.S. at 838-40; *Wallis*, 70 F.3d at 1077.

To establish an Eighth Amendment violation under § 1983, a prisoner must satisfy a two-part test. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The first prong is objective and requires an inmate to demonstrate conditions of confinement are sufficiently serious to pose a "substantial risk of serious harm." *Farmer*, 511 U.S. 825, 834 (1994). The second prong requires a subjective showing that specific defendants acted with deliberate indifference to the inmate's health and safety. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding deliberate indifference is appropriate standard to which prison official's subjective state of mind must be held in a conditions of confinement claim). In other words, the defendant "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

White's Eighth Amendment claims fail because he cannot establish the second prong. The court finds that White has not alleged, and has failed to present any evidence, from which a reasonable jury could conclude that Defendants Nevil, Wells, Mitchell, or Peters were subjectively

---

[2] The court acknowledges that Judge Beckerman of this district recently joined several jurists raising concern at the growing body of scientific research surrounding the use of solitary confinement as a means of imposing discipline or protecting inmates, and that solitary confinement itself may implicate Eighth Amendment rights. *Mora-Contreras v. Peters*, Case No. 6:18-cv-00678-SB, 2020 WL 2089479, at *4-5 (D. Or. Apr. 30, 2020). As Judge Beckerman aptly noted, the constitutionality of solitary confinement is an appropriate and important issue for appellate review. *Id.*

aware of a substantial risk of harm and acted with deliberate indifference to White's health and safety. A careful review of the evidence shows that White submitted grievances in which he claimed that there was paint obscuring sunlight from his cell and that he was denied the ability to purchase religious items while in DSU, but none of those grievances identified Defendants Nevil, Wells, Mitchell, or Peters. (Sobotta Decl. Att. 1, ECF No. 67.) In her declaration, Hearings Officer Nevil attests that "White did not express any concerns to me about DSU conditions or religious accommodations." (Nevil Decl. ¶ 26.) White has failed to identify any evidence to refute Nevil's testimony, and fails to identify any other information indicating that Defendants Wells, Mitchell, or Peters were subjectively aware of a substantial risk of harm and were deliberately indifferent to that harm. *Farmer*, 511 U.S. at 844; *Smith*, 2016 WL 11384325, at *9 (granting summary judgment on Eighth Amendment claim where inmate presented no evidence showing hearings officer knew of DSU conditions). Accordingly, White has not satisfied the second prong of the two-part test with respect to Defendants Nevil, Wells, Mitchell, and Peters, and therefore, cannot establish an Eighth Amendment rights violation.[3]

////

////

With respect to Defendant Taylor, the evidence shows that White did not file a grievance identifying Taylor as having denied him religious items; thus, White has failed to establish that Taylor was subjectively aware of and deliberately indifferent to any risk related to the denial of

---

[3] Additionally, the court finds that no reasonable juror could conclude that the twenty-eight days of lost recreation yard privileges amounted to a grave actual or potential injury to White under these circumstances that would satisfy the first prong. *See May v. Baldwin*, 895 F. Supp. 1398, 1406 (D. Or. 1995) ("[P]laintiff was only deprived of outdoor exercise continuously for a period of, at most, four weeks which does not give rise to a legitimate Eighth Amendment claim."), *aff'd*, 109 F.3d 557 (9th Cir. 1997).

Page 22 – OPINION AND ORDER

religious items.  (Sobotta Decl. Atts. 1 & 2.)  The evidence further shows that White filed three grievances relating to the lack of sunlight and the windows being painted over in DSU, and contending that the lack of sunlight makes him anxious and depressed.  (Sobotta Decl. Att. 3 at 2.)  A December 27, 2015 grievance, EOCI-2015-12-064, is directed to Superintendent Taylor and was returned to White because it failed to comply with ODOC grievance rules.  (*Id.* at 1.) White's grievances dated February 11, 2016 (EOCI -2016-02-070), and January 20, 2017 (EOCI-2017-01-086), also were returned to White for failing to comply with ODOC grievance rules.[4] (*Id.* Att. 4, Att. 5.)

In his briefing, White argues that Taylor admitted in her deposition that the windows in DSU were painted, and that Taylor knowingly placed White in a setting without direct sunlight, and "did nothing to ameliorate the situation."  (Pl.'s Resp. Mot. Summ. J. at 28.)  White's argument misses the mark.  Taylor admitted that the windows were painted over, however, she denied knowing that blocking the sunlight negatively impacted inmate health.  (Chavez Decl., Taylor Dep. 17:23-18:5.)  Additionally, contrary to White's contention, Taylor did not admit knowing the lack of sunlight negatively affected him or that he had filed a grievance stating as much.  Although the 2015 grievance was addressed to Superintendent Taylor, none of the grievances identifies Taylor as the staff person grieved.  (*Id.* Att. 1, identifying Richard McGraw, Kenneth Hogeland, and Justin McLouth as the staff person grieved).  Finally, and perhaps most critically, nothing in the grievances or in Taylor's deposition testimony establishes that Taylor knew of the conditions comprising White's current Eighth Amendment claim – that his 180-day

---

[4] Only the 2017 grievance appears to pertain to the underlying facts of this case.  Clearly the 2015 and 2016 grievances relate to other instances of White's time in disciplinary segregation.  Because White's claims against Taylor fail for other reasons, the court declines to further address this distinction.

Page 23  – OPINION AND ORDER

placement in solitary confinement created a substantial risk of physical, mental, and emotional harm. Therefore, White has failed to identify any evidence that Taylor was subjectively aware of a substantial risk to White's health and safety, and was deliberately indifferent to that risk him, and his Eighth Amendment claim necessarily fails. *Smith*, 2016 WL 11384325, at *9.

Absent a constitutional violation, White is unable to overcome Defendants Nevil, Wells, Mitchell, and Taylor's qualified immunity. Thus, they are immune from suit on White's claims for seeking monetary relief for violations of the Eighth Amendment.

## III.    First Amendment and RLUIPA

Defendants move for summary judgment on White's free exercise of religion claims. They argue he cannot establish that any Defendant was involved in the denial of his request for religious accommodation and contend that monetary damages are not available under the RLUIPA. Plaintiff responds that Defendant Peters, in her official capacity, denied his request for an Odinist hammer, in violation of both the First Amendment and the RLUIPA, 42 U.S.C. § 2000cc-1(a). Defendants are correct.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend I. Inmates "retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Yet, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (internal quotation marks and citation omitted). "To establish a First Amendment free exercise claim, an inmate must show that prison officials burdened the exercise of a sincerely held religious belief." *Carter*, 2020 WL 2844445, at *7 (citing *Shakur v. Schriro*,

Page 24 – OPINION AND ORDER

514 F.3d 878, 884-85 (9th Cir. 2008)).    The prison's conduct must do more than "inconvenience"

an inmate's religious exercise; the conduct "must have a tendency to coerce individuals into acting

contrary to their religious beliefs or exert substantial pressure on an adherent to modify his

behavior and to violate his beliefs."    *Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015).

Turning to White's § 1983 free exercise claims, White has failed to establish that

Defendants Nevil, Wells, Mitchell, or Taylor were involved in denying his requested religious

accommodation.    The prison staff identified in White's grievances relating to his religious

accommodation request do not include Defendants, or any of them.    (Sobotta Decl. Atts. 1 & 2,

identifying staff members David Betts, Chaplain Schwartz, Lieutenant McLouth, and Captain

Rabb.)    Therefore, White has failed to establish a genuine issue of material fact that Defendants

Nevil, Wells, Mitchell, or Taylor substantially burdened White's practice of his religion.    *Jones*,

791 F.3d at 1031-32.    Because White has failed to establish a constitutional violation, he is unable

to overcome Nevil, Wells, Mitchell, and Taylor's qualified immunity.

White's RLUIPA claim for injunctive relief against Director Peters is moot.    White is no

longer housed at EOCI; he has been transferred to Three Rivers Correctional Institution ("TRCI").

*See Jones*, 791 F.3d at 1031 (granting summary judgment on RLUIPA claims where inmate

released from custody).    White points to no evidence of any continued denial of access to religious

items at TRCI, and the court's review of the record reveals no evidence of any continued effects

of the alleged violations.    *Id.*    Therefore, White's request for injunctive relief would have no

practical impact on his rights and is therefore denied.    Accordingly, Defendants are entitled to

summary judgment on White's RLUIPA claim.

*Conclusion*

Based on the foregoing, Defendant's Motion for Summary Judgment (ECF No. 66) is GRANTED.    This case is DISMISSED.

IT IS SO ORDERED.

DATED this _____ day of July, 2020.

_____
JOHN V. ACOSTA
United States Magistrate Judge

Page 26  – OPINION AND ORDER